UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WHITNEY NATIONAL BANK, a
national banking association,

    Plaintiff/Cross-Defendant,

v.                                                     Case No.: 8:09-cv-01788-EAK-TBM

SDC COMMUNITIES, INC. a Florida
corporation, et al.,

    Defendant/Cross-Plaintiff.

_____/

## ORDER ON MOTION TO DISMISS CROSS-PLAINTIFFS' FIRST AMENDED CROSS COMPLAINT

This cause is before the Court on Cross-Defendant's, Whitney National Bank ("Whitney"), Motion to Dismiss (D.E. 23), and response thereto (D.E. 24).

### BACKGROUND AND PROCEDURAL HISTORY

This is a brief summary of the extensive facts set forth in the complaint. Whitney is a federally charted national bank with its main office in Louisiana, but it engages in community banking activities in five states, including the Tampa Bay area of Florida.

Henry and Susanne Rodriguez are husband and wife. They are the owners and holders of all the issued and outstanding shares of stock of SDC. Henry Rodruguez is SDC's sole officer and director. Henry and Susanne Rodriguez are also the owners and holders of all membership units of H&S Hytop, LLC. Henry Rodriguez is the sole manager of that company. SDC is the obligor to Whitney under a Note and Mortgage dated February 1, 2008 in the amount of $15,000,000.00.

1

Henry Rodriguez represented SDC to obtain a revolving line of credit (LOC) from Whitney, which would be secured by a mortgage on property in Sarasota, Florida. Henry personally guaranteed the loan. At the same time, SDC owed $11,425,000.00 to Henry and Susanne Rodriguez under the 2005 Rodriguez Loan, which was secured by a mortgage on real property. The property was subject to a lien in the amount of $6,650,000.00 to JMC. SDC sold property for $10,300,000.00 and used $5,581,460.00 to pay the debt to JMC.

During negotiations of the loan between Whitney and SDC, all parties were represented by experienced lawyers and both sides were eager to close the deal. A dispute arose during the negotiations about whether the loan proceeds should be restricted to use for real estate investments and commercial development approved by Whitney. Cross-Plaintiffs state that Rodriguez refused to enter into a loan with that restriction, and through extensive negotiations, language was entered into Section C of the Note saying, "To the extent not previously paid by Borrower or hereafter paid by Borrower and satisfactory evidence of such payment provided to Whitney . . ." that was allegedly supposed to lift the restriction on use of the proceeds." Cross-Plaintiffs also state that by the date of closing, all parties knew how the loan proceeds would be disbursed and used.

Instead of using the $8,171,121.34 to pay down the mortgage on their homestead, the Rodriguezes re-loaned the money back to SDC under the 2008 Rodriguez loan. Cross-Plaintiffs allege Whitney knew they intended to use the loan proceeds to pay the 2008 Rodriguez loan. During this time, the Rodriguezes wanted to buy an unrelated promissory note and mortgage that Whitney held on property owned by a company called Rod Holdings, LLC of which Henry Rodriguez was a member. He used SDC loan proceeds to purchase that promissory note from Whitney, which makes Whitney itself a recipient of the SDC loan proceeds.

2

On September 30, 2008, Whitney disbursed $4,101,503.43 to SDC with knowledge that the balance on the Rod Holdings note would be used to pay for the assignment of the Rod Holdings mortgage to the Rodriguezes. Cross-Plaintiffs allege that Whitney never objected to this arrangement. SDC did not receive any cross collateral or security interest in the Rod Holdings property. SDC made all interest payments on the SDC loan as required. Cross-Plaintiffs maintain that liquidity could be satisfied by any account that included Henry Rodriguez and his personal financial statement for 2008 and 2009 showed at least $2,000,000.00 in liquidity.

In March 2009, Whitney emailed Henry Rodriguez, requesting he make large deposits with the bank, to which he obliged, but then later withdrew to meet business commitments. Shortly thereafter, Whitney communicated to Henry Rodriguez, alleging SDC was not meeting the liquidity requirement and that the Loan proceeds should not have been used to pay off the amount owed by SDC on the 2008 Rodriguez Loan.

Whitney filed actions for breach of the loan agreement, among other causes of action and Defendants, SDC and Henry Rodriguez filed this action, which was consolidated with the case Whitney originally filed, making this action the cross-claim.

## STANDARD OF REVIEW

A Defendant may move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt the plaintiff can prove no set of circumstances that would entitle him to relief. *Am. Ass'n of*

3

*People with Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1280 (M.D. Fla. 2002). A trial court is required to view the complaint in the light most favorable to the plaintiff. *Ill. ex rel. Madigan v. Telemarketing Assoc., Inc.*, 538 U.S. 600, 618 (2003).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations must be enough to raise a right to relief above the speculative level on that assumption that all of the complaint's allegations are true. *Id.* at 555. "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct 1937, 1949 (2009).

A complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. First Union Natl. Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997). On a motion to dismiss, the court limits its considerations to the pleadings and exhibits attached thereto. *GSW, Inc. v. Long Co., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

## DISCUSSION

Before reaching the substantive issues in the Defendant's Motion to Dismiss, there is one issue to address with regard to Counts I and II in Cross-Plaintiff's First Amended Cross Complaint. In Florida, good faith and fair dealing are parts of every contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). The duty of good faith and fair dealing "must relate to the performance of an express term of the contract." Good faith "is not an

4

abstract and independent term of a contract [that] may be asserted as a source of breach" and thus, no independent cause of action exists for its breach. (quoting *Hosp. Corp. of America v. Fla. Med. Ctr.*, 710 So. 2d 573, 575 (Fla. 4th Dist. Ct. App. 1998); *Weaver*, 169 F.3d at 1317–1318). Thus, Count II must be incorporated into the breach of contract claims, as they cannot exist independently. Presumably, these two Counts refer to the same set of facts as the breach of contract claims in Count I and does not state an additional claim.

I. **Standing**

Defendant argues that Henry Rodriguez's claims against Whitney should be dismissed because he lacks standing to sue under the note for injuries suffered by SDC. Defendant cites many cases for this proposition, though none is binding on this court. The Bankruptcy Court has said, "[G]uarantors of a corporation's debt, even if those guarantors are also stockholders, do not have standing to bring an action if the only harm suffered is derivative of the harm the corporation suffered." *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 317 (E.D. Pa. 1992) (noting also that "a stockholder, director, officer or employee of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation").

All counts in the complaint specify that both SDC and Rodriguez are filing the claims. While the complaint alleges damages to each SDC and Henry Rodriguez, it fails to allege any specific harm that came to Henry Rodriguez personally and independently from that which came to SDC as a result of the calling of the loan. Cross-Plaintiffs must allege and provide facts that support that Rodriguez has suffered an independent harm and thus would have standing to join this complaint. Therefore, each count of the complaint is dismissed with respect to Rodriguez because Cross-Plaintiffs failed to allege the harm he suffered distinct from that which the

corporation suffered as a result of the calling of the loan. Unless Cross-Plaintiff can establish standing for Rodriguez, he should be deleted from the cross complaint.

## II. Fraud and Negligent Misrepresentation Claims

To state a claim for fraud in the inducement, a plaintiff must allege: "(1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007). To state a claim for fraud in the inducement, a plaintiff must allege: "(1) a misrepresentation of a material fact; (2) which the person making the statement knew to be false; (3) that the misrepresentation was made with the purpose of inducing another person to rely upon it; (4) that the person relied on the misrepresentation to his detriment, and (5) that this reliance caused damages." *Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239, 1259 (S.D. Fla. 2009). The allegation on which both of these claims are based appears to be in paragraphs 99 and 107: "Whitney falsely represented to SDC and Rodriguez that there would be no restrictions on the SDC Loan proceeds as described above." Looking to the First Amended Cross Complaint, Cross-Plaintiffs allege each element of each of these causes of action in Counts III and IV with sufficient particularity.

In its Motion to Dismiss, Defendant argues that there can be no reasonable reliance on Whitney's statements because the statements directly contradict the language of Section C of the contract. While it is true that "[a] party cannot recover in fraud for alleged oral misrepresentations that are . . . expressly contradicted in a later written contract," *White Constr. Co., Inc. v. Martin Marrietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1326 (M.D. Fla. 2009) (quoting *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th Dist. Ct. App.

6

2005)), the language of the contract to which Defendant refers is that which is in controversy. Interpreting the contract, which is inappropriate at the motion to dismiss stage, is the only way to reach a conclusion as to whether reliance was reasonable. Therefore, Defendant's Motion to Dismiss Counts III and IV of the First Amended Cross-Complaint is denied.

### III.     Damages Limitation

Defendant argues that Cross-Plaintiffs' claims for damages are barred by the limitation of damages provision in the contract. The issue, then, is whether this exculpatory clause is enforceable. Fraud in the inducement and misrepresentation are tort claims distinct from the breach of contract claim. *See Burton v. Linotype Co.*, 556 So. 2d. 1126, 1127 (Fla. 3d Dist. Ct. App. 1989).

Fraud is not subject to exculpatory clauses in contracts because it is an intentional tort, as is misrepresentation. *Id.* Clauses allowing a party to contract against liability for fraud or an intentional tort are void against public policy. *Mankap Enter., Inc. v. Wells Fargo Alarm Servs.*, 427 So. 2d. 332, 333–34 (Fla. 3d Dist. Ct. App. 1983).

As to the breach of contract claim, Defendant asserts that "limitation-of-liability provisions are enforceable even if they are not mutual and limit the purchaser's potential recovery." *CC-Aventura, Inc. v. The Weitz Co., LLC*, 2009 WL 3326806, at *4 (S.D. Fla., Oct. 9, 2009). The Eleventh Circuit stated, however, "requirements of mutuality of obligation and mutuality of remedy . . . render exculpatory language unenforceable if it would prevent all recovery of damages for the breach of a contractual undertaking in a lease." *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 494 (11th Cir. 1989). This case deals with obligations under a commercial lease agreement and has not been overruled.

7

The question of enforceability of this provision with respect to the breach of contract claim turns on whether the exculpatory provision is unconscionable, as Cross-Plaintiffs attempt to argue in the motion. This determination goes beyond the purview of a motion to dismiss and should not be made on the pleadings alone. Therefore, Section III of Defendant's Motion to Dismiss is denied.

**IV.  Doctrine of *in pari delicto***

The doctrine of *in pari delicto* is an affirmative and equitable defense. *Gastaldi v. Sunvest Resort Comtys., LC*, 2010 WL 457243, at *11 (S.D. Fla., Feb. 3, 2010). The phrase means "in equal fault" and refers to the situation where a plaintiff has participated in the same wrongdoing as the defendant. *Id.* Just because both parties may have engaged in wrongdoing does not necessarily mean they are *in pari delicto*; they may have different degrees of guilt, which may bar use of the defense. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472, U.S. 299, 307 (1985). A court may also preclude the use of the defense based on public policy concerns. *Id.*

Whether the doctrine of *in pari delicto* applies to this case depends on the interpretation of the language of the contract. Fundamentally, the argument rests on whether there was a breach of contract between SDC and Whitney (the Note on the LOC) because that is the basis for all other claims, including fraudulent inducement and misrepresentation. Whether there is a breach is a matter of contract interpretation.

In interpreting a contract in a breach of contract claim, Florida courts look to the circumstances surrounding the contract to determine the intention of the parties and to give effect to that intent. *Republic Servs., Inc. v. Calabrese*, 939 So. 2d 225, 226 (Fla. 4th Dist. Ct. App. 2006); *Smart v. Brownlee*, 195 So. 2d 4, 5 (Fla. 4th Dist. Ct. App. 1967); *Jacksonville Terminal*

*Co. v. Railway Exp. Agency, Inc.*, 296 F. 2d 256, 259 (5th Cir. 1961). However, courts may only look to the circumstances surrounding the contract if the language in question in the contract is ambiguous. *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1269 (M.D. Fla. 2009). Where the language of the contract is clear and unambiguous, the court may look only to the plain meaning of the words in the contract. *Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So. 2d 1159, 1161 (Fla. 3d Dist. Ct. App. 2008). Courts should interpret contractual language using the ordinary and natural meaning of words appearing in the contract that is most commonly understood under the circumstances unless otherwise indicated. *Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 422 F.3d 1275, 1284 (11th Cir. 2005). Ambiguous language is construed against the drafter of the contract. *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000).

However, at the motion to dismiss stage, it is inappropriate to decide whether language in a contract is ambiguous and then make determinations based on what one party believes the language of the contract to say. Additionally, it is impossible to determine at the pleading stage the relative guilt of each party, if any. Thus, the First Amended Cross Complaint cannot be dismissed under the doctrine of *in pari delicto* and Section IV of Defendant's Motion to Dismiss is denied. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss the First Amended Cross Complaint is granted as Section I, and denied as to Sections II–IV. It is further ordered that Count II of the Cross-Plaintiffs' First Amended Cross Complaint be dismissed with prejudice and incorporated into Count I. Therefore, Cross-Plaintiffs have ten days from this date to file a second amended cross complaint.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this /5 day of April 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to: All parties and counsel of record.